UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Newport News Division)

| | | |
|---|---|---|
| LUCILLE MATTHEWS | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO. 4:24-cv-77–AWA-DEM |
| | § § | |
| RECEIVABLE RECOVRY SERVICES, LLC | § § | |
| *Defendant.* | § § | |

**RECEIVABLE RECOVERY SERVICES, LLC's MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ORDER TO SHOW CAUSE AND STAY CASE**

Defendant RECEIVABLE RECOVERY SERVICES, LLC ("RRS" or "Defendant"), through its undersigned counsel, moved this Court to order Phoenix Ayotte to personally appear and show cause as to why she and her law firm Guards Law should not be sanctioned pursuant to Fed. R. Civ. P. 11, Appendix B of this Court's Local Rules (incorporating the Federal Rules of Disciplinary Enforcement), 28 U.S.C. § 1927, and/or the Court's inherent authority. Defendant also moved this Court to stay this action pending resolution of the request for an order to show cause. For the reasons stated herein, the Court should grant both motions.

**INTRODUCTION AND BACKGROUND**

a. History of this Action

On May 9th, 2024, Phoenix Ayotte filed this lawsuit—ostensibly on behalf of Lucille Matthews ("Ms. Matthews")—alleging RRS violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*("FDCPA") and seeking statutory damages pursuant to § 1692k(a)(2)(A), as well as attorneys' fees and costs pursuant to § 1692k(a)(3). (Doc. No. 1). Ms. Ayotte, a Virginia-licensed attorney, signed the complaint on behalf of Ms. Matthews and included the email address

1

"phoenix@guardslaw.com." *Id.* Attached to the complaint is a letter purportedly sent by Ms. Matthews to RRS which contains numerous redactions. (Doc. No. 1-2, pp. 1-2). On May 28, 2024, a paralegal with Frost Echols, LLC informed Ms. Ayotte of the firm's representation of RRS and Ms. Ayotte responded the following day with a settlement demand. *See* Ex. 1, pp. 6-7. Attorney Jesse Tillman followed up and requested the unredacted dispute letter in order for RRS to investigate the matter and also indicated a desire to depose Ms. Matthews early in the case. *Id.* at pp. 1-6. Mr. Tillman also stated that until they could obtain a copy of the letter to investigate the claim, they were not in a position to resolve the case other than through a dismissal by Ms. Matthews. *Id.* at p. 1. Attorney Joy Coleman of Guards Law[1] took over the discussion from Ms. Ayotte, refused to provide the unredacted letter,[2] and continued to press for a settlement while making references to Guards Law's attorneys' fees continuing to accrue. *Id.* at pp. 1-5.

Without the information necessary to properly investigate this matter, RRS answered on June 6, 2024, denying all material allegations and liability. (Doc. No. 7). That same day, Mr. Tillman inquired about a Rule 26(f) conference, made another request for the full letter, and again indicated a desire to depose Ms. Matthews. *See* Ex. 5. Ms. Coleman again pressed for a quick settlement and indicated costs were increasing. *Id.* The parties conducted the Rule 26(f) conference and proposed various revisions to the 26(f) report but with attorney Marwan Daher[3]

---

[1] The disclaimer in Ms. Coleman's email indicates "Guards Law" is both Guards Law LLC and a DBA of Coleman Legal LLC. *See* Ex. 1, p. 9. Guards Law LLC is an Arizona limited liability company formed and managed by Ms. Coleman. *See* Ex. 2. Coleman Legal is a Georgia limited liability company formed by Ms. Coleman. *See* Ex. 3 Ms. Coleman's signature block indicates she is the "Managing Partner" and is admitted to practice in New Jersey and Georgia. *See* Ex. 1, p. 9. The only attorney listed on Guards Law's website is Marwan R. Daher, who is an Illinois-licensed attorney. *See* https://www.guardslaw.com/ (last visited Nov. 14, 2024) and Ex. 4. Neither Ms. Coleman nor Mr. Daher appear to be licensed in Arizona. *See* https://www.azbar.org/for-legal-professionals/practice-tools-management/member-directory/ (last visited Nov. 14, 2024). Guards Law appears to operate through affiliation with solo practitioners like Ms. Ayotte.

[2] Ms. Coleman chastised Mr. Tillman for requesting a copy of the letter and contended Ms. Matthews had no obligation to retain a copy of the letter. Perhaps not but Ms. Coleman's refusal to provide it so that RRS could investigate the claim is truly incredible because Guards Law did have a copy of the letter as evidenced by Ms. Ayotte attaching a redacted copy as an exhibit to the complaint. (*See* Doc. No. 1-2, pp. 1-2).

[3] Mr. Daher's signature block indicates he is a senior partner with Guards Law. *See* Ex. 6, p. 4.

taking the lead for Guards Law. *See* Ex. 6. Like Ms. Coleman, Mr. Daher pressed for a quick settlement. *Id.* On August 1, 2024, the parties filed the Rule 26(f) report, thereby opening the discovery period in this case. (Doc. No. 11).

On August 7, 2024, Mr. Tillman again indicated a desire to take Ms. Matthews' deposition and requested dates from Mr. Daher. (Doc. No. 14-2, p. 3). Mr. Daher responded stating he would discuss with Ms. Matthews, that he planned to appear *pro hac vice* and file a motion to allow Ms. Matthews to appear remotely (even though Mr. Tillman stated he was happy to schedule the in-person deposition close to Ms. Matthews' residence), and that he would inform the Court of their settlement range. *Id.* at p. 2. Mr. Daher did not provide deposition dates, so Mr. Tillman noticed Ms. Matthews deposition to take place on September 4, 2024. (Doc. No. 14, ¶ 5 and Doc. No. 14-3). That same day, Mr. Daher informed Mr. Tillman they were having trouble connecting with Ms. Matthews and may need to withdraw. (Doc. No. 14-4, p. 1). A week later, Mr. Daher followed up saying his firm could not get in contact with Ms. Matthews and would be withdrawing if they did not hear from her by September 6. (Doc. No. 14-5, p. 1). Mr. Daher also stated the deposition must be postponed. *Id.* However, neither Mr. Daher (who did not seek admission *pro hac vice*) nor Ms. Ayotte sought a protective order or other relief from the Court. (Doc. No. 14, ¶ 9). Neither Ms. Matthews nor any attorney claiming to represent her appeared at the deposition. *Id.* at ¶ 10.

Instead, on September 6, Ms. Ayotte filed a motion to withdraw as counsel for Ms. Matthews. (Doc. No. 12). Ms. Ayotte stated Ms. Matthews was unresponsive to their repeated attempts to contact her over the prior month. (Doc. No. 12-1, ¶¶ 3-4). On September 9, RRS filed a motion to compel Ms. Matthews to appear and testify at a deposition. (Doc. No. 14). The Court granted Ms. Ayotte's motion to withdraw on September 16. (Doc. No. 15). The Court also granted RRS's motion to compel and directed Ms. Matthews to contact RRS's counsel within 10 days to

coordinate the deposition. (Doc. No. 16). Upon receipt of the order, Ms. Matthews promptly complied and contacted Andrew Biondi. *See* Ex. 7, Declaration of Lucille Matthews ("Matthews Decl."),[4] ¶ 7. Ms. Matthews asked Mr. Biondi what was going on and informed him she only recently learned of this action. *Id.* at ¶¶ 5-7. Under the circumstances, instead of deposing Ms. Matthews, RRS's counsel thought the better course was to have an informal conversation with her. Ms. Matthews agreed to meet with Chad Echols, managing partner of Frost Echols, LLC, to discuss the matter. Matthews Decl., ¶¶ 8-10. Ms. Matthews graciously allowed Mr. Echols to record the conversation, a transcript of which is attached to her declaration. *Id.* at ¶¶ 11-13.

The conversation was illuminating. Ms. Matthews and her husband sought help with some credit issues from Credit Saint but ultimately elected to use a different company unrelated to Guards Law. Matthews Decl., ¶¶ 2-3. Ms. Matthews was wholly unaware she had attorneys or was involved in a lawsuit prior to being contacted by attorneys seeking to be relieved as counsel. *Id.* at ¶¶ 5-7. The attorneys informed her she "probably will hear from another attorney on the back side" and instructed her not to speak to those lawyers. Trans., pp. 12:2-12:16. Ms. Matthews was also unaware of another lawsuit filed on her behalf, discussed below, until speaking to Mr. Echols. Matthews Decl., ¶ 15. Importantly, Ms. Matthews never wanted to file either action. *Id.* at ¶ 23. However, she does want to find out why these actions were brought in her name without her knowledge. *Id.* at ¶ 24.

**b. History of Lawsuit Against R & B Corp. of Virginia, DBA Credit Control Corp.**

On March 26, 2024, Ms. Ayotte filed a complaint—ostensibly on behalf of Ms. Matthews—against R & B Corporation of Virginia DBA Credit Control Corp ("R&B"). *See*

---

[4] The copy attached is a PDF created from an image provided by Ms. Matthews. Ms. Matthews stated she would mail the original to counsel but that has not yet been received. Due to the timing, the undersigned had to file this motion with the image and will file a scan of the original once received.

*Matthews v. R & B Corp. of Virginia DBA Credit Control Corp.*, Case No. 4:24-cv-00048-JKW-RJK (E.D. Va.), Doc. No. 1 (filed Mar. 26, 2024). That complaint, also signed by Ms. Ayotte, alleges similar facts and causes of action as alleged in this lawsuit. *See, id.* The complaint states Ms. Matthews' attorneys devoted numerous hours consulting with her and seeks recovery of $40,800 in attorney fees, representing 68 hours of attorney work at a rate of $600.00 per hour. *Id.* at ¶¶ 36-37. Ms. Matthews disputes these contentions as she never consulted with any attorney about the action. Matthews Decl., ¶ 16; Trans., pp. 8:23-9:17. R&B did not respond so Ms. Ayotte requested entry of default, which Deputy Clerk granted. *Matthews v. R&B*, Case No. 4:24-cv-00048-JKW-RJK (E.D. Va.), Doc. No. 7 (filed July 8, 2024) and Doc. No. 8 (filed July 9, 2024). Shortly thereafter, Ms. Ayotte filed a notice of settlement. *Id.*, Doc. No. 10 (filed July 18, 2024). The Court then dismissed the action with prejudice. *Id.*, Doc. No. 11 (filed Sep. 16, 2024).

All this happened without Ms. Matthews's knowledge. She was unaware of the R&B lawsuit until she met with Mr. Echols on October 23. Matthews Decl., ¶¶ 11, 15. Neither Ms. Ayotte nor any other Guards Law attorney consulted with her about the lawsuit nor informed her of the settlement. *Id.* at ¶¶ 16-17. Ms. Matthews did not authorize either the filing of the lawsuit or the sending of the dispute letters on her behalf upon which the lawsuit was based. *Id.* at ¶¶ 19-22. And as of November 13, 2024, Ms. Matthews has not received any funds associated with the settlement of the R&B lawsuit. *Id.* at ¶ 18.

### c. History of Other Actions Brought by Guards Law

The undersigned have reason to believe the actions taken by Ms. Ayotte, Ms. Coleman, Mr. Daher, and Guards Law may not be limited to Ms. Matthews. A PACER search shows Ms. Ayotte filed at least eight other lawsuits in the past year in addition to the actions filed in which Ms. Matthews is named as the plaintiff. The complaints generally include allegations and claims

similar to this action and often quickly dismissed, suggesting there was a quick (and presumably cheap) settlement. *See Leila Ameen v. Transworld Systems, Inc.*, Case No. 2:24-cv-00152-AWA-RJK (E.D. Va.) (complaint filed Mar. 11, 2024; stipulation of dismissal filed May 24, 2024); *Dwight Taylor v. Credit Control Corp. a/k/a R & B Corp. of Virginia*, Case No. 4:24-cv-00035-JKW-LRL (E.D. Va.) (complaint filed Mar. 12, 2024, voluntary dismissal filed May 13, 2024); *Kelly Pitts v. Credit Mgmt. Co. a/k/a Collection Mgmt. Co.*, Case No. 3:24-cv-00185-MHL (E.D. Va.) (Complaint filed Mar. 13, 2024; dismissal filed May 3, 2024); *Aaron Paige v. First Point Res.*, Case No. 1:24-cv-00797-MSN-WEF (E.D. Va.) (complaint filed May 13, 2024, dismissal filed June 12, 2024); *Kayla Hoffman v. F.H. Cann & Assocs., Inc.*, Case No. 3:24-cv-00449-JAG (E.D. Va.) (complaint filed June 16, 2024, dismissal filed Sep. 11, 2024); *Rachel Cooke v. FirstPoint Res.*, Case No. 3:24-cv-00451-RCY (E.D. Va.) (complaint filed June 19, 2024, *Jasen Hoffman v. Fair Collections & Outsourcing, Inc.*, Case No. 3:24-cv-00459-RCY (E.D. Va.) (complaint filed June 20, 2024, notice of settlement filed July 15, 2024).

There is one additional case which remains pending. *See Leila Ameen v. Portfolio Recovery Assocs. LLC*, Case No. 2:24-cv-00153-EWH-LRL (E.D. Va.) Doc. No. 1 (filed Mar. 8, 2024). This case is especially interesting, both because of what has transpired in it and because it appears to be the same plaintiff as the *Ameen v. Transworld Systems* case. In the case against Portfolio Recovery Associates ("PRA"), Ms. Ayotte filed a motion to dismiss with prejudice on behalf of the plaintiff. *See Ameen v. PRA*, Case No. 2:24-cv-00153-EWH-LRL (E.D. Va.) Doc. No. 11 (filed Aug. 6, 2024). Ms. Ayotte also filed a motion to quash various subpoenas issued by PRA to several individuals. *Id.* at Doc. No. 17 (filed Aug. 16, 2024). PRA opposed the motion to dismiss, contending:

> Having filed Plaintiff's Complaint – and tendering demands on PRA purporting to be from at least 11 additional consumers under similar circumstances – Plaintiff's

6

> counsel now wants to dismiss the Complaint and withdraw the demands, hoping to walk away as if nothing had happened. "No harm, no foul," they would not doubt have the Court believe. But there has been harm. As discussed more fully below, PRA has reason to believe that the "dispute" on which Plaintiff's claim was based was prepared and deliberately sent to a fax number Plaintiff's counsel knew did not belong to PRA (despite PRA's well-advertised and communicated ways to dispute), casting doubt on the good-faith basis of Plaintiff's entire Complaint. Moreover, Plaintiff's claim is but one of a dozen such demands Plaintiff's counsel has made against PRA, all involving similar misdirected fax disputes, and all of which have imposed significant time and expense costs on PRA to conduct its investigation.
>
> PRA has not had the benefit of formal discovery in this case. In fact, Plaintiff's counsel has impeded PRA's discovery into what PRA believes to be sanctionable conduct at every turn. They have provided undersigned counsel with false information on multiple occasions. They have refused to accept service or coordinate depositions of third-party consumers who may have information relevant to PRA's investigation. And they have filed a Motion to Quash discovery, not only of third parties but of Plaintiff herself, preferring instead to cloak their conduct with a hasty dismissal of this case. The Court should not permit this.

*Id.* at Doc. No. 18, pp. 1-2 (filed Aug. 20, 2024); Doc. No. 21, pp. 1-2 (filed Aug. 30, 2024). Unsurprisingly, PRA also opposed the motion to quash. *Id.* at Doc. No. 22 (filed Aug. 30, 2024). Mr. Daher did actually appear pro hac vice in the PRA case. *Id.* at Doc. No. 20 (filed Aug. 30, 2024); Doc. No. 24 (filed Sep. 5, 2024).

The Court set the matters for hearing on November 12. *Id.* at Doc. No. 25 (filed Oct. 25, 2024). The Court held the hearing, at which Ms. Ayotte and Mr. Daher were present. *Id.* at Doc. No. 26 (filed Nov. 12, 2024). The Court denied the motion to dismiss as moot but does not appear to have ruled on the motion to quash. *Id.* The Court also directed the plaintiff to file a declaration of Ms. Coleman by November 19, permitted PRA to file an additional brief within 14 days thereafter, and permitted the plaintiff to file a response. *Id.* Because the transcript is not yet publicly available, the undersigned are not privy to all that transpired at the hearing. However, from the order, it does appear the Court is investigating the actions taken by Ms. Ayotte, Ms. Coleman, Mr. Daher, and Guards Law regarding their actions in that case. Defendant respectfully

7

requests the Court do the same here and order Ms. Ayotte and Guards Law to appear and show cause as to why they should not be sanctioned in this action. Defendant also respectfully requests the Court otherwise stay all matters in this action.

## ARGUMENT

### a. Request for Order to Show Cause / Sanctions

In relevant part, Rule 11 states:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating for it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

Fed. R. Civ. P. 11(b). It further empowers the Court to sanction any attorney and law firm (and hold a law firm jointly responsible for an attorney's violation) who violates the rule after the attorney and firm are given notice and a reasonable opportunity to respond. *Id.* at (c)(1). The Court may order an attorney or law firm to show cause on its own initiative. *Id.* at (c)(3).

The purpose of Rule 11 is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (citing *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (en banc)). A district court may impose sanctions: (1) when the party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose. *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (internal quotations and citations omitted).

28 U.S.C. § 1927 states "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." As with Rule 11, before imposing sanctions under § 1927, the Court needs to give the offending party notice of the specific conduct for which she is potentially subject to sanctions and an opportunity to be heard. *See, e.g., Johnson v. Cherry*, 422 F.3d 540, 551-52 (7th Cir. 2005) (citations and quotation marks omitted).

The Local Rules of the U.S. District for Court Eastern District of Virginia incorporate Rule 4 of the Model Federal Rules of Disciplinary Enforcement. Appendix B of the Local Rules states, in relevant part:

**FRDE RULE IV**

**STANDARDS OF PROFESSIONAL CONDUCT**

A. For misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this Court may be disbarred, suspended from practice before this Court, reprimanded or subjected to other disciplinary action as the circumstances may warrant.

B. Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the Virginia Rules of Professional Conduct adopted by this Court shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of any attorney-client relationship. The Rules of Professional Conduct adopted by this Court are the Rules of Professional Conduct adopted by the highest Court of the state in which this Court sits, as amended from time to time by that state Court, except as otherwise provided by specific Rule of this Court after consideration of comments by representatives of bar associations within the state.

E.D. Va. Local R. Appendix B.

The Supreme Court of Virginia regulates the conduct of attorneys licensed to practice law in Virginia. A lawyer in Virginia cannot bring a lawsuit on someone's behalf without that person's knowledge, as an attorney must keep the client "reasonably informed about the status of a matter" and "of facts pertinent to the matter," *Trent v. OnderLaw, LLC,* 81 Va. App. 179 (2024). Rule 1.4, Virginia Rules of Professional Conduct as incorporated within the Rules of the Supreme Court of Virginia. RULE 1:4 of the Rules of the Supreme Court of Virginia, GENERAL PROVISIONS AS TO PLEADINGS, states: "(a) Counsel tendering a pleading gives his assurance as an officer of the court that it is filed in good faith and not for delay." Rule 3.3 of the Virginia Rules of Professional Conduct, Candor Towards the Tribunal, states, "(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal; . . . "

In addition to the foregoing, the Court has the inherent power to sanction an attorney or a law firm involved in a case before it. As the Supreme Court said:

> We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *see, also, Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980) ("The bad-faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith. Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.") (citations and quotation marks omitted).

In this matter (and possibly others), Ms. Ayotte and Guards Law (as well as Ms. Coleman and Mr. Daher) engaged in sanctionable conduct. A credit repair company with which they appear to have some sort of affiliation submitted a dispute letter on behalf of Ms. Matthews without her

knowledge or consent. Ms. Ayotte and Guards Law then filed suit on behalf of Ms. Matthews without her knowledge or consent. Ms. Coleman refused to provide an unredacted letter of which Guards Law was obviously in possession so that RRS could investigate the claim and, instead, attempted to leverage a quick and relatively cheap settlement. Mr. Daher likewise tried to leverage a quick and relatively cheap settlement, and stated he would inform the Court of the settlement amount in an attempt to limit Defendant's ability to conduct discovery. And, when pressed, Ms. Ayotte and Guards Law withdrew from the case, with two attorneys (presumably Mr. Daher and either Ms. Ayotte or Ms. Coleman) telling their "client" they were withdrawing and not to discuss the matter with any other attorneys. In short, they either directly or indirectly attempted to manufacture an FDCPA claim without the consumer's knowledge or consent, attempted to leverage a quick settlement, attempted to avoid Defendant discovering what was truly going on, and got out of the case before having to face any consequences. Such action is clearly sanctionable under any and all of the foregoing standards.

Defendant, however, is in a bit of an unusual position because Ms. Ayotte and Guards Law already withdrew from the case. Defendant is therefore unable to serve a draft motion within the 21-day safe harbor period contemplated by Rule 11(c)(2) because Ms. Ayotte and Guards Law no longer have the ability to take appropriate corrective action. The Court, however, retains jurisdiction to impose appropriate sanctions. *See, e.g., In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d 651, 660 (E.D. Va. 1999) ("Such remedy is in addition to the Court's remedy for any violation of an attorney's responsibilities to the Court as an officer of the Court or exercise of the Court's inherent authority to regulate the bar appearing before it.") (citation omitted); *see, also, In re Finkelstein*, 901 F.2d 1560, 1564 (11th Cir. 1990) ("Because lawyers are officers of the court

11

which granted admission, such courts are necessarily vested with the authority, within certain limits, to impose reasonable sanctions for lawyer misconduct.").

The conduct of Ms. Ayotte and Guards Law (as well as Ms. Coleman and Mr. Daher) in this case warrant further investigation by the Court. And while no clear misconduct can be clearly gleaned from the docket, the pattern of the other cases filed and the apparent investigation of their conduct in *Ameen v. PRA* suggests this may not be an isolated incident, further supporting the need for the Court to look into this matter. Defendant therefore respectfully requests the Court enter an order for Ms. Ayotte and Guards Law to appear and show cause as to why they should not be sanctioned. And should the Court deem sanctions to be appropriate, Defendant respectfully requests those sanctions include an award of Defendant's costs and attorneys' fees from Ms. Ayotte and Guards Law in defending against this action.

### b. Request to Stay

A "District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). Here, both Mr. Matthews and Defendants are parties to a lawsuit neither of them wanted. The only ones who did want the lawsuit—Ms. Ayotte and Guards Law (including Ms. Coleman and Mr. Daher)—are nowhere to be found. Both Ms. Matthews and Defendant desire that the Court inquire about Ms. Ayotte's and Guards Law's actions in this case. Defendant therefore believes the Court should keep this case open for the limited purpose of conducting that inquiry. However, Defendant also believes it would be appropriate for the Court to otherwise stay this case for the simple reason that Ms. Matthews and RRS should not have to litigate against each other in a matter in which neither wants to do so. Requiring Ms. Matthews and RRS to litigate would but a burden on them, which neither wants, and would reward the actions of Ms. Ayotte and Guards Law by forcing their hand to

dismiss the case thereby preventing a full inquiry into their conduct. Defendant therefore respectfully requests the Court stay all deadlines and other matters in this case except for the investigation into the conduct of Ms. Ayotte and Guards Law, and any actions ancillary thereto.

## CONCLUSION

For the reasons stated herein, Defendant respectfully requests the Court enter an order requiring Phoenix Ayotte and Guards Law to appear and show cause as to why they should not be sanctioned for their conduct, and respectfully requests the Court stay all other matters in this action while it conducts its investigation into their conduct.

Dated: November 15, 2024              Respectfully submitted,

                                     **RECEIVABLE RECOVERY SERVICES, LLC,**

                                     By counsel

*/s/* Andrew Biondi
Andrew Biondi, Esquire (VSB No. 48100)
SANDS ANDERSON PC
919 East Main Street, Floor 23 (23219)
P. O. Box 1998
Richmond, Virginia 23218-1998
(804) 783-7265 (telephone)
abiondi@sandsanderson.com
*Counsel for Receivable Recovery Services, LLC*

/s/ Jesse M. Tillman, III
Jesse M. Tillman, III
*Pro Hac Vice*
(Fed I.D. 14157)
(S.C. Bar No. 100419)
Frost Echols, LLC
P.O. Box 12645
Rock Hill, SC 29731
(803) 329-8970 (telephone)
Email: jay.tillman@frostechols.com
*Counsel for Receivable Recovery Services, LLC*

**CERTIFICATE OF SERVICE**

       I hereby certify that on November 15, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to all counsel/parties of record.

                                            */s/* Andrew Biondi
                                            Andrew Biondi, Esquire (VSB No. 48100)
                                            SANDS ANDERSON PC
                                            919 East Main Street, Floor 23 (23219)
                                            P. O. Box 1998
                                            Richmond, Virginia 23218-1998
                                            (804) 783-7265 (telephone)
                                            abiondi@sandsanderson.com
                                            *Counsel for Receivable Recovery Services, LLC*